UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALFONSO ELIAS RIVERA <br>     Plaintiff <br><br> v. <br><br> AFFORDABLE MOTORS INC. and <br> CREDIT ACCEPTANCE CORPORATION, <br>     Defendants | CIVIL ACTION NO. <br><br><br><br><br><br><br> APRIL 25, 2017 |

## COMPLAINT

### I. INTRODUCTION

1. This is an action brought by a consumer against an automobile dealership for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.,* the Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. §§ 36a-770 *et seq.,* Article 2 of the Uniform Commercial Code ("UCC"), and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*

### II. PARTIES

2. Plaintiff Alfonso Elias Rivera is a consumer residing in Bridgeport, Connecticut.

3. Defendant, Affordable Motors Incorporated ("Affordable Motors"), is a Connecticut corporation that operates a licensed automobile dealership in Bridgeport, Connecticut.

4. Defendant, Credit Acceptance Corporation ("CAC"), is a Michigan corporation with a principal place of business in that state, and it is a finance company that accepts assignment of retail installment sales contracts.

### III.   JURISDICTION

5. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1640 and Fed. R. Civ. P. 18(a).

6. This Court has jurisdiction over Affordable Motors because it is located in Connecticut and is organized under Connecticut law.

7. This Court has jurisdiction over CAC because it regularly conducts business in this state.

8. Venue in this Court is proper because the Plaintiff resides in Connecticut and the transaction alleged herein occurred in this state.

### IV.   FACTUAL ALLEGATIONS

9. Prior to March 22, 2017, the Plaintiff saw an advertisement for a 2009 Mazda 6 (the "Vehicle") for sale at a price of $9,995 and weekly payments of $52.00.

10. Plaintiff went to Affordable Motors and met with a salesman, Ricardo Araya ("Ricardo"), to inquire about the Vehicle.

11. Plaintiff agreed to purchase the Vehicle and he paid a deposit of $4,000.

12. Affordable Motors prepared a Purchase Order that listed a total cash price of $12,100, an amount that was $2,105 more than the advertised price of the Vehicle.

13. The Purchase Order also included a fee of $1,305.00 for a service contract and $710 for GAP which Plaintiff neither requested nor desired.

14. Plaintiff financed the balance of $11,687.74 at a stated annual percentage rage of 18.99% pursuant to a Retail Installment Contract (the "Contract").

15. The Contract provided for fifty-four (54) monthly payments of $323.54, a payment that was $22.66 more per week than Affordable Motor's advertised payment.

2

16. The Contract was assigned to CAC.

17. Plaintiff was asked to execute the contract documents electronically, and he was not permitted to view the documents prior to signing them and did not know that he was being charged more than the advertised price for the Vehicle.

18. Affordable Motors did not provide Plaintiff with a copy of the Purchase Order or Retail Installment Contract at the time that he signed the contract.

19. Affordable Motors did not provide Plaintiff with a copy of the service contract or GAP addendum.

20. Plaintiff was not permitted to take delivery of the Vehicle on this date.

21. Plaintiff returned to Affordable Motors the next day, on March 23, 2017, and he requested a refund of his down payment. Affordable Motors refused to return the deposit, and it provided Plaintiff with a copy of only the first two pages of the Retail Installment Contract.

22. The Vehicle was never delivered to Plaintiff, and to the best of Plaintiff's knowledge, the Vehicle remains in the possession of Affordable Motors.

23. On March 30, 2017, Plaintiff, by his attorney, sent written notice to Affordable Motors and CAC that he revoked acceptance of the Vehicle due to substantive fraud and material misrepresentations by Affordable Motors or alternatively, elected to rescind the contract due to violations of RISFA.

24. Defendants have not refunded the down payment of $4,000 to Plaintiff.

25. CAC is subject to these claims and to Plaintiff's defenses under the Contract in accordance with the terms of the Contract.

## V.  CAUSES OF ACTION

### A.  TRUTH IN LENDING ACT

26. Plaintiff incorporates paragraph 1 through 25.

27. Affordable Motors is a "Creditor" within the meaning of the Truth in Lending Act.

28. Affordable Motors charged more for the Vehicle than the advertised price.

29. Upon information and belief, some or all of the increased price was attributable to a discount fee or credit that Affordable Motors was required to pay or give to Credit Acceptance in order to induce it to accept assignment of the Contract.

30. This increased price would not have been charged in a comparable cash transaction to purchase the Vehicle.

31. Affordable Motors violated TILA by improperly including the increased cost of the Vehicle as part of the amount financed and not including it in the finance charge, resulting in an inaccurate itemization of the amount financed.

32. The true annual percentage rate is materially in excess of the disclosed rate of 18.99% as a result of Affordable Motor's failure to include the increased cost of the Vehicle as a finance charge.

33. Affordable Motors also violated TILA by failing to provide Plaintiff with a copy of the Contract, which contained the required truth in lending disclosures, prior to consummation of the transaction.

34. Affordable Motors is liable to Plaintiff for actual damages plus additional statutory damages of $2,000 and attorney's fees and costs.

### B.  RETAIL INSTALLMENT SALES FINANCE ACT

35.   Plaintiff incorporates paragraph 1 through 34.

36.   Through its violations of TILA, as pled above, and by failing to provide Plaintiff with a copy of the Contract in a form that he could keep before he became obligated to the transaction, Affordable Motors violated RISFA, which incorporates the requirements of TILA by operation of Conn. Gen. Stat. § 36a-771(b).

37.   Affordable Motors also violated Conn. Gen. Stat. § 36a-772(a), because the true annual percentage is in excess of 19% as a result of its failure to include the increased sale price as a finance charge.

38.   Affordable Motors has maintained possession of the Vehicle and is in the same position as it was to its pre-contractual position.

39.   Plaintiff is entitled to a rescission of the Contract due to the violations of RISFA and a return of the $4,000 down payment paid for the Vehicle.

### C.  CONNECTICUT UNFAIR TRADE PRACTICES ACT

40.   Plaintiff incorporates paragraph 1 through 39.

41.   Affordable Motors has violated CUTPA as follows:

   a.  The violations of TILA and RISFA as aforedescribed;

   b.  It sold the Vehicle for more than the advertised price, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1), which prohibits dealerships from failing to sell vehicles for the advertised price;

   c.  It falsely and deceptively advertised that weekly payments for the Vehicle would be $52.00;

d.  It failed to provide Plaintiff with a copy of the Contract documents in a form that he could keep; and

e.  It failed to provide copies of the service contract and GAP addendum, thereby preventing Plaintiff from discovering that those items had been included, that they were optional, and that they could be canceled for a full credit.

42. Plaintiff has suffered ascertainable losses of money or property in that he was obligated to pay a greater debt to CAC, he has lost his $4,000 down payment, and he has lost use of the Vehicle.

43. The defendants are liable to the Plaintiff for his actual damages plus punitive damages and a reasonable attorney's fee and costs.

44. Plaintiff seeks rescission of the contract as an equitable remedy under CUTPA.

## D.     REVOCATION OF ACCEPTANCE UNDER UCC

45. Plaintiff incorporates paragraphs 1 through 44.

46. Affordable Motors has made false representations regarding the Vehicle's sale price and finance charge that constitute material misrepresentation or fraud within the meaning of Conn. Gen. Stat. § 42a-2-721, which provides a buyer with the same UCC remedies as would be available for breach of warranty.

47. Plaintiff has validly and effectively revoked his acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608.

48. Plaintiff is entitled to an order that he has no further obligation to Defendants and a return of the $4,000 down payment paid.

6

### E.     CREDITOR COLLECTION PRACTICES ACT – CREDIT ACCEPTANCE ONLY

49.   Plaintiff incorporates paragraphs 1-48.

50.   Plaintiff, by his lawyer, sent Credit Acceptance written notification that he had rescinded the contract or, alternatively, had revoked acceptance.

51.   The letter further informed Credit Acceptance that Plaintiff disputed any further indebtedness under the Contract.

52.   Credit Acceptance subsequently initiated an electronic transfer of funds from Plaintiff's account notwithstanding its actual notice of the dispute and of Plaintiff's intention to not make payments under the Contract.

53.   Credit Acceptance is liable to Plaintiff for his damages plus additional damages of up to $1,000 plus a reasonable attorney's fee pursuant to Conn. Gen. Stat. § 36a-648.

Wherefore, Plaintiff claims actual damages, TILA statutory damages of $2,000; punitive damage, and attorney's fees and costs; revocation of acceptance of the Vehicle or, alternatively, an order rescinding the contract, and a return of the down payment.

PLAINTIFF, ALFONSO ELIAS RIVERA,

By: /s/ *Daniel S. Blinn*
    Daniel S. Blinn (ct02188)
    dblinn@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax (860) 571-7457